# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No. 20-cv-1200

**CAYLAANNE CHRISTEL CONNOR,**

    Plaintiff,

v.

**OFFICER ROBERT WONG, in his individual capacity,**
**AURORA POLICE DEPARTMENT, a governmental agency,**
**CITY OF AURORA, COLORADO, a municipality,**

    Defendants.

## COMPLAINT AND JURY DEMAND

*"The use of excessive violence is one of the fundamental characteristics of American policing. The excessive use of force symbolically communicates the unquestionable authority of the state in the affairs of the citizenry[1]."*

COMES NOW, Plaintiff Caylaane Christel Connor, by and through her counsel, Baumgartner Law, L.L.C., and respectfully submits this Complaint against the Defendants and allege the following:

### JURISDICTION AND VENUE

1. This action is brought pursuant to 42 USC §1983, §1988, the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §1331, §1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.

---

[1] Manning, Peter and Lawrence Redlinger (1970: 99). Police Work. Cambridge, MA: The MIT Press.

2. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 USC §1391(b) because the Defendants are citizens and residents of Colorado, and the events, acts and/or omissions giving rise to this action occurred in Colorado.

## PARTIES

3. Plaintiff Caylanne Christel Connor (hereinafter, "Plaintiff") is and was at all relevant times a citizen of the State of Colorado.
4. Defendant Aurora Police Department is a government entity in the state of Colorado.
5. Defendant City of Aurora, Colorado is a Colorado municipality.
6. Defendant officer Robert Wong is or was at all times relevant a citizen of the state of Colorado employed by the Aurora Police Department.

## GENERAL ALLEGATIONS

### A. Facts Specific to the use of Unconstitutional Excessive Force Against Plaintiff.

7. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.
8. On March 29, 2019 Plaintiff was accosted by multiple members of the Aurora Police Department.
    a. The accosting officers are the following:
    Ryan Sweeney, Robert Wong, Timothy Meehan, Nicholas Langdon, and Daniel Veith.
9. Plaintiff was entering what she believed to be her friend's car. Unknown to Plaintiff, the car had been reported stolen.
10. The accosting Aurora police officers were hiding and waiting to see if someone was going to enter the car.
11. When Plaintiff entered the car through the driver's side door the accosting Aurora police officers drew their weapons and held her at gunpoint. The car was never started.
12. None of the accosting officers knew if Plaintiff was actually involved with any criminal activity or had a factual basis to believe she was a threat to anybody's safety.
13. While being held at gunpoint Plaintiff was told to keep her hands on her face. She complied.
    a. Every single accosting officer lied in their reports because they claim Plaintiff kept dropping her hands from her face. This assertion by the accosting officers is false.

14. One accosting officer screamed at Plaintiff to place her hands over her eyes – she complied.

15. Plaintiff was never commanded to leave or exit the vehicle – it was officer Timothy Meehan that reached into the vehicle without warning and intentionally grabbed Plaintiff by the left arm and forced her out of the vehicle.

    a. Every single officer lied in their police reports when they said Plaintiff was commanded to get out of the vehicle. This assertion by the accosting officers is false.

16. As she was leaving the vehicle officers had a clear view of Plaintiff's waistband and could see there are not any concealed weapons.

17. When Plaintiff's feet touched the pavement of the parking lot officer Timothy Meehan intentionally, instantly and without warning, threw her to the ground at the very same moment an officer screamed for Plaintiff to get on the ground. Plaintiff never had an opportunity to freely move.

18. Timothy Meehan had full control of Plaintiff's left arm when he grabbed and threw her to the ground. All other present officers knew Timothy Meehan had full control of Plaintiff's left arm.

19. On her way to the ground officer Daniel Veith intentionally grabbed Plaintiff's right arm. Officers Veith and Meehan both went to the ground with Plaintiff.

20. While on the ground, and according to his report, Daniel Veith states: "I pinned her arm to the ground so that it could not come out without my control." At this moment, Plaintiff was fully controlled by police officers as if she were in handcuffs. All present officers knew Daniel Veith had Plaintiff's right arm under full control and that she was now fully restrained as if she were in handcuffs.

21. At this point, all present officers, including Robert Wong, knew that Plaintiff was being compliant, under full control of officers Meehan and Veith, and was not resisting or attempting to flee.

22. As Plaintiff was being thrown to the ground, officer Robert Wong, who was responsible for a K-9 named "Loki," screamed out "Jesus, Dan, you're going to get bit." Officer Robert Wong had his K-9 Loki ready to attack Plaintiff even though she was compliant with all police commands because he intended to inflict unnecessary and unreasonable force no matter the circumstance. The possibility of officer Daniel Veith almost getting bit is a result

of officer Robert Wong's reckless, unreasonable, and grossly incompetent manner in handling his K-9 Loki; it was not caused by any actions of the Plaintiff.

23. While on the ground, Plaintiff can be heard saying in an incredibly calm voice "Hey sir, sir…hey, hey, hey, hey" and she is not at all moving her body or resisting the officer's control. The accosting officers are panicked and unprofessional. Any perceived danger was created by their own recklessness.

24. Before anybody issues a command to Plaintiff while she is laying on the ground, compliant, non-resistant and under the full control of officers Meehan and Veith, officer Robert Wong stated, "Hey I'm gonna bite him" and then begins giving his K-9 Loki the command "Hit." Plaintiff has been on the ground for 3 seconds at this point. Officer Wong continues to yell the command "Hit" to Loki and is forcing the dog's face into Plaintiff's leg. **After** officer Wong began to command his dog to bite Plaintiff another officer can be heard giving the following command to Plaintiff "get your hands out."
    a. All officers lied in their reports because they falsely claim that the attack by Loki was necessary due to Plaintiff's non-compliance with commands to put her hands behind her back.

25. Plaintiff can be heard saying something to the effect of "I can't move" because officers Meehan and Veith already had full control Plaintiff

26. Officer Robert Wong, without paying attention to any facts and circumstances around him, has to force his dog Loki to bite Plaintiff.  Initially, Loki is actively resisting officer Wong's commands because Plaintiff is not moving or struggling.

27. Inevitably Loki does bite and rip apart Plaintiff's leg – the attack lasts about 20 seconds.

28. Because Plaintiff was already under total control of the police, compliant, non-resistant, did not pose any risk of death or serious bodily injury to officers or citizens, and was not a risk of fleeing _both the use and duration_ of the attack by Loki was unnecessary and unreasonably excessive force.

29. Loki was commanded by officer Wong to attack a woman that was fully restrained, compliant, non-resistant and did not present a risk of flight.

30. All of the present officers, including officer Wong, knows that they are not to assault individuals that are compliant, under full restraint and not resisting, do not pose a threat of death or serious bodily injury to officers or citizens, and is not trying to flee.

31. After the unreasonable and unnecessary attack by Loki at the command of officer Wong, Plaintiff can be heard screaming, crying and whimpering while officers look on with indifference to the violence they are witnessing. Later, officers can be heard laughing and joking while they begin searching the car that was reported stolen and talking about the use of force that was implemented – while Plaintiff is still crying and whimpering in the background.

32. Officer Wong's statement of "I'm gonna bite him" indicates his intent to have his dog attack Plaintiff no matter what – his goal was to inflict pain and suffering on Plaintiff even if she was following all commands from his fellow officers.

33. None of the officers on scene had a reason to believe Plaintiff posed an actual threat of death or serious physical injury to the police or nearby citizens.

34. Plaintiff never posed a risk of, or actually attempted, to resist officers' commands or flee from the police in an attempt to escape.

35. Robert Wong's actions are the direct and proximate cause of the serious, permanent, and life altering injuries sustained by the attack from Loki.

**B. Facts Specific to City of Aurora and Aurora Police Department's Liability**

36. The unreasonable and excessive force used on Plaintiff occurred as a direct result of the Aurora Police Department's informal customs and practices in regard to excessive force incidents. Aurora Police Department and the City of Aurora fail to meaningfully investigate and discipline officers that do in fact use unreasonable and excessive force. Thus, Aurora police officers are free and unconstrained to unreasonably use excessive force unlawfully because they know there will not be a substantive investigation or disciplinary action taken against them for the unlawful use of excessive force.

37. After the attack by Loki, officer Wong asked another officer to write the use of force report because he "…screwed the last one up." Based upon current information Plaintiff believes officer Wong did not write his own use of force report so he would not screw up telling the lies necessary to cover up his unreasonable and excessive use of force.

38. Due to the uniformity of all relevant police reports, and the lies told within those reports, Plaintiff believes that each officer conspired to create a false narrative that would justify the use of force. These lies were necessary because every officer, including officer Wong,

knew or at least should have known that it was unlawful to sic a dog on Plaintiff when she was fully compliant, did not pose a threat of death or serious bodily harm to any officer or citizen, was not trying to flee, and never resisted the physical control of officers when she was fully restrained by Daniel Veith and Timothy Meehan.

39. Had the City of Aurora and Aurora Police Department actually investigated Robert Wong's use of force, they would have found every single officer lied in their reports about Plaintiff's acts that police officers claimed lead to the unreasonable use of excessive force. The City of Aurora and Aurora Police Department's failure to investigate and discipline officers is a pattern of behavior that serves to promote a culture within the Aurora law enforcement community (we include judges and prosecutors as part of the law enforcement community) supporting, promoting and condoning the unlawful use of force by Aurora police officers.

40. Plaintiff alleges and believes that officer Robert Wong was not found to have engaged in unreasonable and excessive force against Plaintiff by the City of Aurora and the Aurora Police Department.

41. By failing to meaningfully investigate, find, and discipline officers for obvious constitutional violations in the use of force, the City of Aurora and the Aurora Police Department have created a culture and practice that allows for Aurora police officers to use illegal, excessive, and unreasonable levels of force when seizing citizens. The following is a non-exhaustive list of cases where Aurora police officers were not disciplined for obvious unlawful excessive force incidents:

   a. Aurora police officers were not disciplined for wrongfully killing Naeschylus Vinzant-Carter on March 6, 2015, which led to a $2,600,000 settlement by the City of Aurora.

   b. Aurora police officers were not disciplined for their unconstitutional detention and excessive use of force against Darsean Kelley on February 19, 2016. Mr. Kelly was paid $110,000 to settle his claims pre-litigation.

   c. Upon information and belief Aurora police officers were not disciplined for choke-slamming Vanessa Peoples for what officers falsely claimed was a perceived failure of Ms. Peoples to be 100% compliant with commands. Ms. Peoples settled her claims for $100,000 pre-litigation.

    d. Upon information and belief Plaintiff believes Aurora police officers were never disciplined for the murder of Elijah McClain – a young boy who beaten so badly by Aurora police officers he died of injuries despite committing no crime or being suspected of criminal activity.

42. The City of Aurora and Aurora Police Department's failure to find wrongdoing and failure to discipline officers in this case and the others reflects a custom, policy, or practice of ratifying blatantly illegal and improper conduct regarding the use of force. These ratifications evidence that such police conduct is carried out pursuant to the regimen of training provided by Aurora, and that such conduct is customary within Aurora's Police Department.

43. It is the City of Aurora and Aurora Police Department's responsibility to properly train its officers to ensure they perform their duties correctly and to discipline, rather than ratify, their improper and illegal conduct. The past failures have led to the unlawful and unconstitutional use of force against Plaintiff and will continue to result in future unconstitutional and unlawful uses of force against others.

44. Due to their past conduct, the City of Aurora and Aurora Police Department has condoned the illegal use of force used by officer Wong against Plaintiff. The unlawful use of force by officer Wong is a result of the City of Aurora and Aurora Police Department's failure to train and supervise its employees to avoid the use of excessive force against people that are completely subdued, compliant, not physically resisting arrest, and do not pose a threat to the safety of officers or citizens.

45. The City of Aurora and Aurora Police Department knew or had constructive knowledge that its employees would engage in an act of excessive force that violates a citizen's constitutional rights.

46. The City of Aurora and Aurora Police Department were deliberately indifferent to Plaintiff's constitutional rights because they knew that people in Plaintiff's position would be at a substantial risk of suffering dangerous consequences due to a failure to train, supervise, investigate, and discipline its employees.

47. The history of policing in Aurora is clear and the position of the City of Aurora and Aurora Police Department is clear – the constitution is of no concern and does not apply to Aurora police officers.

48. The policies, customs, or practices in failing to properly train, supervise, and discipline police officers are actual and proximate causes of officer Robert Wong's violation of Plaintiff's constitutional rights.

49. All of the actions of the above named Defendants have deprived Plaintiff of her rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused her damages.

## CLAIMS FOR RELIEF
## CLAIMS UNDER FEDERAL LAW, 42 U.S.C. §1983

50. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

51. The Fourth Amendment of the U.S. Constitution prohibits unreasonable or excessive use of force in connection with searches and seizures. While detaining, restraining, and/or arresting a person, the Fourth Amendment protections only allow police officers and deputies to use the amount of force that is reasonably necessary under the circumstances

## FIRST CLAIM FOR RELIEF
**Violation of the Fourth Amendment of the United States Constitution**
**Excessive Force Resulting in Permanent Debilitating & Disfiguring Injury**
**(By Plaintiff Caylaanne Connor against All Defendants)**

52. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

53. A "seizure" for purposes of the Fourth Amendment to the U.S. Constitution occurs when an officer intentionally restrains the freedom of a person to simply walk away. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

54. The law in the 10th Circuit is clearly established: police officers using force on an effectively subdued individual that is not actively resisting violates the Fourth Amendment. *McCoy v. Meyers*, 887 F.3d 1034, 1052 (2018).

55. Officer Wong's act of commanding his K-9 Loki to attack a person for about twenty seconds who is already apprehended, subdued, compliant, non-resistant, and not at risk of fleeing or posing a threat of death or serious bodily injury to an officer or citizen is a

      violation of clearly established law in regard to *the use and duration* of police K-9s attacking citizens on an officer's order. See: *Savannah v. Collins*, No. 12-CV-02403-RBJ-MJW, 2015 WL 4237592 at 4; *Moore v. Summer*, No. 12-3204-SAC, 2015 WL 1470290 at 10 and *Vette v. Sanders and Guston*, No. 18-cv-01987-KMT, 2020 WL 1166839 at 6, 7.

56. Plaintiff was seized the moment officers Timothy Meehan and Daniel Veith had brought her to the ground and fully restrained her so that she could not move as if already in handcuffs.

57. The need for any force ceased to exist the moment Plaintiff was fully subdued as if she was in handcuffs by Timothy Mehann and Daniel Veith.

58. Plaintiff never failed to follow any officer's commands nor physically resisted their attempts to control her body. Nevertheless, officer Wong, without justification, used unreasonably excessive force by having his K-9 Loki attack Plaintiff even though she was compliant and already under full control of police officers.

59. Prior to being seized, Plaintiff did not pose a threat of physical harm to anybody and no reasonable officer could perceive any such threat. Officer Wong's use of force was objectively unreasonable in light of the facts and circumstances at the time of Plaintiff's seizure. Plaintiff was not at risk of fleeing police custody.

60. Officer Wong knew that the force used against Plaintiff and its duration would cause severe injury because any police officer knows that commanding an attack dog to bite into the leg of a person that is not resisting or fleeing custody will lead to serious bodily injury.

61. Officer Wong's engagement of K-9 Loki on a non-resistant and compliant suspect that is already under full control of his fellow police officers demonstrates he is improperly trained or deliberately chose to ignore his training when he commanded Loki to attack Plaintiff. Furthermore, Officer Wong's actions were committed intentionally, willfully and wantonly which demonstrates a deliberate indifference to and reckless disregard for Plaintiff's constitutionally protected rights.

62. At the time of her seizure by police Plaintiff had a constitutionally protected right to be free from the use of unreasonable and excessive force through the deployment of a K-9 police dog. Officer Wong and his fellow officers knew or should have known that under the circumstances any use of force – especially the deployment of an attack dog – would be unlawful.

63. The use and duration of Loki's attack on Plaintiff is objectively unreasonable given the totality of the circumstances described in this complaint. Thus, the attack by Loki is unconstitutional.

64. Any reasonable jury can conclude that the use of K-9 Loki to attack Plaintiff after she was already subdued, non-resistant (*Dixon v. Richer*, 922 F.2d 1456 (10th Cir.1991)), and did not pose any threat of escape (*Herrera v. Bernalillo Cty. Bd. Of Cty. Comm'rs*, 361 Fed.Appx. 924, 928 (10th Cir.2010)) was unreasonable in both the use and duration of Loki's attack even if the officers claim otherwise.

## SECOND CLAIM FOR RELIEF

**(Unconstitutional Customs and Practices; Failure to Supervise & Train Resulting in a Violation of Constitutional Rights.)**

**(Plaintiff against City of Aurora and Aurora Police Department)**

65. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

66. The City of Aurora and Aurora Police Department have ultimate decision and policy making power in regard to the training and supervision of Aurora police officers.

67. Aurora police officers have a long history of using excessive force in an unconstitutional manner and never being punished for their infractions.

68. By failing to punish officers for clear constitutional violations in regard to excessive force, and even justifying these failures publicly despite claims to review their use of force policy, the city of Aurora and Aurora police department has created a de-facto policy that has given the unconstitutional use of force the power of law.

69. The City of Aurora and Aurora Police Department have failed to properly train, supervise, and/or discipline its employees generally and Officer Wong specifically regarding the proper and/or improper use of physical restraint and constitutional limits on the use of force which resulted in the implementation of excessive force on the Plaintiff who was already fully controlled and in custody by police officers and did not pose a threat to anybody or a risk of fleeing.

70. The City of Aurora and Aurora Police Department know there is an obvious need to train police officers on the constitutional limits of force when interacting with citizens.

71. The City of Aurora and Aurora Police Department know, based on already established law in Colorado stated above, that having a police dog attack a person that is non-resistant, compliant, fully restrained, and posing no risk of flight is excessive force.
72. The City of Aurora and Aurora Police Department know it is clearly unconstitutional for K-9 police dogs to attack civilians that have been subdued and pose no threat of fleeing.
73. Nevertheless, the citizens of Aurora are constantly subjected to the unconstitutional use of force by Aurora police officers because the officers are not properly trained in the constitutional use of force.
74. The failure to properly train officers despite the long history of excessive force constitutes a deliberate indifference for the rights of the citizens of Aurora to be free from excessive force because the long history of excessive force shows poorly trained officers will violate a citizen's Fourth Amendment rights.
75. All of these failures by the City of Aurora and Aurora Police Department is the moving force and proximate cause to Plaintiff's injuries.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against Defendants and award her all relief as allowed by law and equity including but not limited to the following:

   a. Actual economic damages as established at trial;
   b. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non -pecuniary losses;
   c. Punitive damages for all claims as allowed by law in an amount to be determined at trial
   d. Declaratory relief and injunctive relief as appropriate;
   e. Appropriate equitable relief;
   f. Pre-judgment and post-judgment interest at the highest lawful rate;
   g. Attorney's fees and costs; and
   h. Such further relief as justice requires.

**PLAINTIFF DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 29th day of April, 2020.

Respectfully submitted,
BAUMGARTNER LAW, L.L.C.
*Original signature on file at Baumgartner Law, L.L.C.*

 *s/ S. Birk Baumgartner*
S. Birk Baumgartner, #47829
Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113
Phone: (720) 626-9418
Fax: (720) 634-1018
Íbirk@baumgartnerlaw.com


 *s/ Matthew J. Greife*
Matthew J. Greife, #43487
Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113
Phone: (720) 626-9418
Fax: (720) 634-1018
matt@baumgartnerlaw.com


Plaintiff's Address:
c/o Baumgartner Law, L.L.C.
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113